**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MYTASHA KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 06-0519-WS-C** |
| | ) | |
| **ADT SECURITY SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 19) and its Motion to Strike Portions of the Declaration of Mytasha King (doc. 32). Both Motions are ripe for disposition.[1]

**I.      Nature and Scope of Action.**

On September 1, 2006, plaintiff Mytasha King ("King"), who was at that time proceeding *pro se*, filed a perfunctory six-paragraph Complaint (doc. 1) against defendant ADT Security Services ("ADT").[2]  The first paragraph read, in its entirety, "Title VII of 1981 in retaliation."

---

[1]      As an initial matter, defendant's summary judgment submissions are not in compliance with Local Rule 5.5(c), which provides as follows: "If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response." *Id.*  Rather than submitting just the relevant portions, ADT has submitted all or substantially all of the plaintiff's 196-page deposition transcript, Mary Anne Back's 91-page deposition transcript, Brandy Lee's 50-page deposition transcript, and Becky Kickliter's 148-page deposition transcript. In addition to violating Local Rule 5.5(c), this practice clogs the court file with superfluous materials and forces the Court to wade through immaterial documents to locate the specific pages on which movant relies. Further, plaintiff's submissions run afoul of Paragraph 13(c) of the Rule 16(b) Scheduling Order (doc. 16), which provides that if a party's exhibits in support of or in opposition to a motion exceed 50 pages in the aggregate, courtesy hard copies must be delivered to chambers.

[2]      Although the Complaint was nominally filed *pro se*, King testified in her deposition that she received assistance from an attorney (not her present counsel of record) in preparing the pleading. Indeed, plaintiff's testimony is that in drafting her Complaint, she "just typed exactly what [the unnamed attorney] told [her] to put down." (King Dep., at 131.) Clearly, then, the Complaint was prepared with the assistance of an attorney.

The second and third paragraphs merely recited the parties' respective names and addresses. The fourth paragraph gets to the meat of King's claims, alleging that, while working for ADT as a sales representative, she had applied for the position of human resource coordinator (the "HR job") in December 2005, that she met the qualifications for that position, that she was not interviewed for the job, and that a white female was selected in lieu of King. That paragraph further recites King's belief that she was "discriminated against because of [her] race, black, in violation with [*sic*] Title VII of the Civil Rights Act of 1964, as amended." (Doc. 1, ¶ 4.) As further grounds for this claim, King alleges that all six employees on ADT's administrative team are white, and that ADT provided a pretextual reason for its failure to hire King for the HR job. No other incidents or allegations of discrimination are set forth in paragraph 4. The fifth paragraph states only that "ADT Security Services issued an unfavorable decision on February 2, 2006." (*Id.*, ¶ 5.) The sixth and final paragraph is an *ad damnum* clause claiming various forms of compensatory and punitive relief.

On its face, then, the Complaint consists of a single, straightforward Title VII claim of race discrimination against ADT for failure to hire King to the position of human resource coordinator in February 2006.

Two months after the Complaint was filed, plaintiff's counsel filed a Notice of Appearance (doc. 12) contemporaneously with the parties' Report of Rule 26(f) Planning Meeting (doc. 13). In the Rule 26(f) Report, plaintiff's counsel expanded on the Complaint in a narrative statement alleging that King's claims were for race discrimination and retaliation under both Title VII and 42 U.S.C. § 1981; and that she had been subjected to race discrimination when she was removed from her inside sales position in favor of a white female. (Doc. 13, at 1-2.) Plaintiff's counsel acknowledged that these allegations exceeded the boundaries of the Complaint by including in the Rule 26(f) Report the following footnote: "Plaintiff's initial complaint was filed *Pro Se*. Now having obtained counsel, Plaintiff intends to seek leave to amend her complaint within the period allowed by this joint Report of Parties." (*Id.* at 1-2 n.1.) However, plaintiff never sought leave of court to amend her complaint and never filed any

proposed amendment.[3]  As a result, the operative pleading in this action is the Complaint filed by King without counsel of record at the outset of this litigation.  The scope of her claims in this litigation will therefore be evaluated by reference to that initial Complaint, notwithstanding plaintiff's unfulfilled intention of amending the pleading at some future time.  Having elected not to amend the Complaint to expand her claims and theories of relief, plaintiff is constrained to conduct this litigation in accordance with that pleading.

II.     **Motion to Strike.**

At the close of summary judgment briefing, ADT filed a lengthy Motion to Strike (doc. 32), in which it sought to excise eight portions of the Declaration of Mytasha King (doc. 28) submitted in opposition to the Motion for Summary Judgment.  Because any summary judgment evaluation necessarily hinges on the type and nature of facts in the record, and because the Motion to Strike calls into question which facts are properly before the Court, resolution of that Motion is the appropriate analytical starting point.

Defendant's objections to the King Declaration are governed by Rule 56(e), Fed.R.Civ.P., which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence."  *Id.*; *see also Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.") (citation omitted).  While it is not necessary that all evidence offered on summary judgment be submitted in admissible form, that evidence cannot be considered at the Rule 56 stage unless it can be reduced to admissible form at trial.  *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); *see generally Corwin*, 475 F.3d at 1249 ("[e]vidence inadmissible at trial cannot be used to avoid summary judgment") (citation omitted); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp.2d 1322,

---

[3]     This is so despite the fact that the Rule 16(b) Scheduling Order (doc. 16) set a cutoff date for motions for leave to amend pleadings of February 1, 2007, fully two and a half months after the filing of the Rule 26(f) Report.  Plaintiff neither complied with the February 1 deadline nor requested an enlargement of same to provide her with additional time to submit a proposed amended pleading.

1327 n. 2 (S.D. Ala. 2003) ("Documents must generally be properly authenticated to be considered at summary judgment, unless it is apparent that those documents can be reduced to admissible, authenticated form at trial.").  "When an affidavit contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp.2d 1232, 1240 (S.D. Ala. 2006) (citation omitted). Armed with these general principles, the Court will consider ADT's eight-pronged attack on the King Declaration.

First, defendant objects to King's statement that "[i]t was well known amongst everyone throughout the office that Ms. Lee was not performing well ... as an outside sales rep."  (King Decl., ¶ 5.)  Courts have routinely excluded such "common knowledge" averments from consideration at the Rule 56 stage.  *See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2nd Cir. 1997) (rejecting plaintiff's testimony of alleged violations that were "common knowledge" for want of personal knowledge).[4]  As such, this passage of the King Declaration will be **stricken**.

Second, ADT asks the Court to strike King's statement that "all white employees who applied for the vacancy were either given an interview for the position, or provided a reason as to why they would not be considered for the position."  (King Decl., ¶ 7.)  According to defendant, this allegation must be stricken because King has not provided sufficient foundation to demonstrate her personal knowledge.  Defendant overstates the evidentiary threshold at the summary judgment stage.  For King's statement to be considered on summary judgment, she does not have to present in painstaking detail the foundation for her personal knowledge; to the contrary, her mere assertion that the statement is based on personal knowledge suffices unless the context demonstrates otherwise.  *See HomeBingo*, 428 F. Supp.2d at 1238 ("when an affiant avers that his statements are based on personal knowledge, a district court is bound to accept

---

[4]        *See also Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 295 (5th Cir. 1987) (testimony that certain facts were "common knowledge" among shop employees "fails as hearsay"); *Stevens v. Mohave County*, 2006 WL 3499932 (D. Ariz. Dec. 5, 2006) (affidavit stating witness's understanding via "common knowledge" is insufficient under Rule 56(e)); *Doss v. Martinez*, 2001 WL 493166, *5 (N.D. Tex. May 4, 2001) (plaintiff's statement that co-worker's insubordination is common knowledge is inadmissible hearsay and cannot be considered on summary judgment).

[such] statements as true, unless the context demonstrate[s] otherwise") (citing *Martin v. Rumsfeld*, 2005 WL 1526465, *2 (11th Cir. June 29, 2005)).[5]  At the outset of her Declaration, King specifically represented that the statements therein were based on her personal knowledge. (King Decl., ¶ 1.)  Nothing in the context of the challenged statement demonstrates that she lacks personal knowledge of whether white applicants were given interviews or told why they would not be considered.  Accordingly, the Motion to Strike is **denied** as to paragraph 7.

Third, ADT invokes the "sham affidavit" rule in seeking to strike the reference in paragraph 8 of the King Declaration to plaintiff being moved into an outside sales position in October 2005.  According to defendant, this statement contradicts King's prior sworn testimony that she was moved into outside sales in August 2005, not October.  "Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).  The problem with defendant's reliance on that rule here is that there is no obvious discrepancy between King's Declaration and her deposition testimony on this point.  During her deposition, King testified that she switched to outside sales "in probably August, maybe, of '05."  (King Dep., at 69.)  When asked again about the timing, she said that she "believed" it occurred at "about that time."  (*Id.* at 144, 177.)  There is no inherent inconsistency in King testifying that she was transferred in "probably August, maybe" and "about that time," then to clarify her response in her Declaration by averring that these events occurred in October 2005.  In that regard, the Eleventh Circuit has recently cautioned that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Board of Public Educ. for Bibb County*, --- F.3d ----, *8, 2007 WL 2332506 (11th Cir. Aug. 17, 2007) (citation and internal quotations omitted).  For that reason, and to avoid depriving the trier of fact of the opportunity to

---

[5]      Were the law otherwise, no declaration or affidavit could be considered on summary judgment unless it expressly provided the factual predicate of each and every allegation set forth therein, demonstrating the affiant's personal knowledge.  The resulting proliferation of voluminous, cumbersome summary judgment affidavits would multiply litigation expenses, burden courts with burgeoning evidentiary submissions, and transform the summary judgment proceeding into a gauntlet of evidentiary mini-trials, all in derogation of the purposes of Rule 56(e), Fed.R.Civ.P.

discern which witnesses are telling the truth and when, this Circuit "require[s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Id.* (citation omitted).  For any lesser variation in testimony, the proper approach is to test that inconsistency through cross-examination at trial and allow the jury to weigh it in determining the witness's credibility.  There being nothing more than a <u>possible</u> inconsistency, and certainly much less than an <u>inherent</u> inconsistency, between paragraph 8 of the King Declaration and her halting, uncertain deposition testimony on this point, the sham affidavit rule has no application, and the Motion to Strike is **denied** as to this passage.[6]

Defendant's fourth challenge to King's Declaration points to paragraph 14, in which King asserted that the announced qualifications of the HR job were made more rigorous after she filed her EEOC Charge.  Defendant's objection is that plaintiff has not shown a sufficient foundation to establish personal knowledge as to those announced qualifications at different points in time.  As noted *supra*, however, an affiant's statement that her averments are based on personal knowledge must be accepted for summary judgment purposes unless the context demonstrates otherwise.  Nothing in the context of King's Declaration demonstrates that she could not have had personal knowledge of what qualifications ADT had announced for the HR job prior to or after filing her EEOC Charge.[7]  Therefore, defendant's objection is **overruled**.

---

[6]      *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (explaining that a nonmovant may create a genuine issue of material fact by submitting affidavit clarifying testimony given in his deposition); *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (observing that a nonmovant "may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits"); *Messick v. Horizon Industries Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony").

[7]      The crux of ADT's argument here appears to be that King could not have known what the qualifications were for the position before filing her EEOC Charge in March 2006 because she did not know about the January 2006 posting.  But plaintiff did testify in her deposition that when she applied for that position in December 2005 the qualifications listed on the ADT website were less stringent than those on the job posting documentation that defense counsel showed her at her deposition.  (King Dep., at 75-76.)  Those facts provide ample foundation for the statement in King's Declaration and support a reasonable inference that the job description was changed after the EEOC Charge was filed.

Fifth, defendant interposes another personal knowledge objection to King's statements in paragraphs 16 and 17 of her Declaration that the January 2006 vacancy for the HR job was never posted. This objection is meritless, inasmuch as the foundation for this averment is clearly presented on the face of the Declaration. Specifically, plaintiff states, "When I heard that the initial selectee had left the company, I kept checking the company's website so that I could submit another application," but that she never saw reference to the vacancy at the designated online location for job postings. (King Decl., ¶ 16.) Whatever defects this averment may have, it certainly does not fail at the Rule 56 stage for want of personal knowledge, which is the only objection interposed here.[8] Likewise, defendant's assertion that King could not have personal knowledge that Lee had not applied for the initial human resource coordinator vacancy, or that she was the only applicant for the second vacancy, ignores the fact that King has specifically alleged that she has personal knowledge, and nothing in the context of these statements demonstrates otherwise. The Motion to Strike is **denied** as to paragraphs 16 and 17 of the King Declaration.[9]

Sixth, ADT objects that King's characterization in paragraph 18 of her Declaration of her communication with Becky Kickliter about the human resource coordinator vacancy amounts to

---

[8] ADT suggests that King could not have personal knowledge of whether the vacancy was posted unless she worked in ADT's human resources department and had direct responsibility for posting job announcements. This argument borders on absurdity. Clearly, one can gain personal knowledge of whether a job posting was or was not made by repeatedly checking the forum for such a posting, irrespective of whether that person is vested with responsibility for making the posting herself. Moreover, as defendant has not propounded a "sham affidavit" objection to this portion of the Declaration, the deposition excerpt reproduced in the Motion to Strike is unavailing.

[9] Nor is defendant's cause advanced by its citation to authorities for the proposition that bald conclusions, opinion and hearsay without specific facts are not admissible on summary judgment. Had the King Declaration merely stated, "ADT refused to hire me for the HR job because I am black," that line of authorities would be applicable. But defendant attempts to use these principles to strike down averments of specific facts (*e.g.*, "the new vacancy was never advertised or posted," "Ms. Lee did not even apply for the initial vacancy"). There is nothing conclusory about these statements; rather, they are just the kind of specific, particularized facts that a plaintiff is expected to present in opposition to a motion for summary judgment. As such, the authorities cited on pages 7 and 8 of the Motion to Strike are unhelpful.

mere "self-serving speculation that contradicts her deposition testimony." (Motion to Strike, at 8.) With respect to the personal knowledge requirement, King has properly alleged personal knowledge and there are myriad ways that she could have personal knowledge that Kickliter was aware of her previous application for the HR job.[10] Again, the Court declines defendant's invitation to impose onerous foundation requirements on a summary judgment declaration where the declarant has adequately alleged personal knowledge and nothing therein is to the contrary. Nor is there any inherent inconsistency between King's statement in her Declaration that she had applied for the HR job previously and her deposition testimony that she had not submitted a signed job bid form. Indeed, King's deposition testimony and Declaration render it absolutely clear that she believed her application to have been complete without regard to the job bid form. And finally, ADT misconstrues the last sentence of paragraph 18 (which reads "Kickliter told me that the position had been filled already, despite not being posted a second time") as an averment that Kickliter informed King that the position had not been posted a second time. Although the text is somewhat ambiguously phrased, by far the most reasonable construction is that King is stating (a) that Kickliter told her the position had been filled; and (b) King's observation that the position had been filled despite not being posted the second time. Construed in that eminently reasonable manner, there is no inconsistency that would require the striking of the last sentence of paragraph 18. Once again, defendant's objections are **overruled**.

ADT's seventh objection to the King Declaration is that paragraph 19 "is self-serving speculation that contradicts her deposition testimony, and contains inadmissible hearsay beyond her personal knowledge." (Motion to Strike, at 9.) In paragraph 19, King states that Kickliter and Mary Anne Back "were aware of [her] interest in the position because of [her] previous application and several conversations [she] had with them regarding the position." (King Decl., ¶ 19.) In her deposition, King unequivocally testified that she had not informed either Kickliter or Back that she had applied for the HR job. (King Dep., at 84-85.) The problem, however, is that defense counsel never clearly asked whether, and plaintiff never clearly stated that, she had

---

[10]     In fact, King goes on in her Declaration to reveal that she had had several conversations with Kickliter concerning that position. (King Decl., ¶ 19.) Those conversations would represent an obvious source of personal knowledge for King that Kickliter was aware of her application.

never talked with Back or Kickliter about her interest in working as a human resource coordinator at any time.  At most, plaintiff's deposition testimony reflects that she never told Kickliter or Back that she had actually applied.  It is of course possible to have a conversation with someone regarding a position (as alleged in the Declaration) without telling that person that one has applied for that position (which the deposition transcript confirms that King did not do).  Because the allegedly conflicting portions of the deposition and Declaration can be reconciled, this testimony falls short of the sort of inherent inconsistency required to strike the Declaration on a "sham affidavit" theory.  Nor is it availing for defendant to object to paragraph 19's recitation of the events of a lunch meeting among Back, Kickliter and Amanda Phillips.  While that statement may be hearsay (inasmuch as King was not present at the meeting), there is no blanket prohibition on hearsay at the summary judgment stage where, as here, it appears that such testimony can be reduced to admissible form at trial (presumably by plaintiff calling Kickliter to testify to substantially the same facts she testified to on pages 72 through 78 of her deposition concerning the lunch meeting, which are summarized in paragraph 19 of the King Declaration).  Defendant's objections to paragraph 19 are **overruled**.

Eighth and finally, ADT interposes objections to paragraph 20 of the King Declaration as lacking foundation concerning plaintiff's personal knowledge and offering hearsay regarding what Back may have said.  To the extent that defendant reiterates its foundation argument, the Court rejects it for the same reasons that it has rejected analogous objections directed at other portions of the Declaration.  To the extent that defendant objects to hearsay regarding what Back may have told King, all indications are that plaintiff can reduce that hearsay to admissible form at trial by calling Back as a witness.  Besides, it appears that Back's statements to plaintiff are not hearsay pursuant to Rule 801(d)(2)(D), Fed.R.Evid.  The Motion to Strike is **denied** as to this paragraph.

III.   **Background Facts.**[11]

     A.   ***King's Employment at ADT.***

---

[11]   The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor.

Construed in the light most favorable to plaintiff, the record facts are these: King began working for ADT's office in Mobile, Alabama as a residential resale representative on February 17, 2004.  (King Decl., ¶ 1.)[12]  In this capacity, her job functions entailed contacting prospective customers who already had security equipment in their homes (because, for example, they were former ADT customers or had moved into a house with pre-installed security equipment) to purchase security services from ADT.  (King Dep., at 39-40; Back Dep., at 13.)  ADT's residential resale staff at its Mobile office included two "inside" resale representatives (one of whom was King) and four or five "outside" resale representatives.  (King Dep., at 55-56.)  The difference is that "inside" staff worked in the office and made sales calls by telephone, while "outside" staff were field representatives who went door to door on sales calls.  (*Id.* at 41, 56; King Decl., ¶ 2.)  In this arrangement, King and the other inside resale representative had an assigned office, desks and computers, while the outside resale representatives used vacant cubicles in the "bullpen" area of the office on an as-needed basis.  (King Dep., at 64-66.)

King's direct supervisor, Mary Anne Back, testified that King did a "very good job" in inside sales.  (Back Dep., at 48.)[13]  It is undisputed that King has "a very good sales record" at ADT.  (*Id.* at 86.)  Moreover, King voluntarily took on additional responsibilities training new sales representatives, and Back told her that she was doing a good job.  (King Decl., ¶ 3; King Dep., at 68-69.)

### B.    *The Transfer of King to Outside Sales.*

 In October 2005, Back announced that King was being moved from inside sales to outside sales in order to allow Brandy Lee, a white female who was struggling in outside sales, to move to inside sales in an effort to improve Lee's performance.  (King Decl., ¶ 8.)  King had

---

[12]    At present, King remains employed by ADT at its Mobile, Alabama office as a residential resale representative.  (Courseault Decl., ¶ 3.)

[13]    Rather than providing copies of official deposition transcripts in her summary judgment briefing, plaintiff filed what appear to be unformatted text file versions of the transcripts.  Although the Court will consider these documents in the manner that they were provided, plaintiff is reminded that discovery materials should be filed in their official, certified form.  Uncertified, draft transcripts should not be filed in any proceeding in this District Court, and are subject to being stricken.

never expressed interest in switching to outside sales and had never had prior conversations with Back on that topic. (*Id.*)[14]  In connection with her involuntary transfer to outside sales, King experienced no reduction in compensation, but she was ousted from her office. (King Dep., at 69; Back Dep., at 72.)  ADT's stated reason for not allowing King to retain her office, desk and telephone was that those accoutrements were furnished only to inside sales representatives, and that because of their duties were in the field, no outside sales representatives were given assigned offices, desks and telephones. (Back Dep., at 72.)

Notwithstanding this explanation, King complained about the move the very next morning by calling Audrey Courseault, ADT's Human Resources Manager for the Southeast Region. (King Dep., at 146; Courseault Decl., ¶ 2.)  King's complaint to Courseault was that Back was requiring her to move out of her office. (King Decl., ¶ 11.)  Plaintiff offers no evidence that she told Courseault that she believed Back's conduct was racially motivated in any respect.  Shortly after Courseault communicated the substance of the complaint to Back, Back met with King and assured her that ADT was not trying to discriminate against her but that Lee was being moved into inside sales in an attempt to help Lee improve her performance. (King Dep., at 147-48.)  Back explained to King that the office, phone, computer and desk were part of the inside sales position, and that no outside representatives had such perquisites. (Back Dep., at 74.)  King did not protest further, but moved to outside sales with no further ado and without ever asking to return to inside sales. (King Dep., at 148; Back Dep., at 69.)  The inside sales position was eventually eliminated by the company.

### C.    The December 2005 Hiring Decision.

Also in or around October 2005, the Mobile office's human resource coordinator position became vacant when the incumbent resigned. (King Dep., at 71; King Decl., ¶¶ 6, 8.)  ADT made a general announcement that it would be hiring for the position. (King Dep., at 73.)  King

---

[14]      In its summary judgment briefs, ADT argues that Back made this switch because King approached Back and "requested to go into telmar rotation going to outside sales." (Back Dep., at 45, 73.)  For Rule 56 purposes, however, the evidence is taken in the light most favorable to the nonmovant.  For that reason, the Court cannot adopt defendant's position that King was transferred at her request, when plaintiff's evidence is that King never made such a request.  The conflicting evidence is construed in plaintiff's favor.

informed Back that she was interested in applying.  (King Decl., ¶ 6; Back Dep., at 61.)[15]  Back
advised King to apply online via the CareerLine feature of ADT's intranet website.  (King Decl.,
¶ 6; Kickliter Decl., ¶¶ 9-10.)  So King logged onto the CareerLine system, located the human
resource coordinator position, and completed the online form, after which she received a
message that her application had been sent successfully.  (King Dep., at 74-75.)  ADT records
reflect that King submitted her materials on December 9, 2005.  (*Id.* at 78 & Exh. 7.)

　　　　In order to apply for a posted position within ADT, an employee must, in addition to
filling out the online application, complete and submit a form called a "Job Bid Worksheet."
(Courseault Decl., ¶ 13; Back Dep., at 53; Kickliter Dep., at 38-39, 42.)  This "bid form" (as it is
sometimes called) must be signed by the employee's current manager to confirm the employee's
good standing.  (Courseault Decl., ¶ 13; Back Dep., at 53; Kickliter Dep., at 38-39, 42.)[16]  This
requirement is so integral to the job application process that an employee's application is not
deemed complete unless and until she has submitted a signed bid form.  (Courseault Decl., ¶ 14.)
The uncontroverted evidence is that, "[i]n the event that the employee does not submit the
completed form, he or she is not considered an applicant for the position," even if that person has
completed every other step in the application process.  (*Id.*)  The ADT manager who made the
hiring decision for the HR vacancy in December 2005 was Becky Kickliter, who testified, "If I
never received the job bid, then I wouldn't interview [a candidate]. ... I wouldn't know to
consider that person."  (Kickliter Dep., at 39-40.)  Kickliter stressed that she must have a job bid

---

[15]　　　King's interest in the position is perhaps surprising, given that it would have been
accompanied by a substantial pay cut.  The sales representative job that King held as of October
2005 was compensated on a commission-only basis; however, King has consistently earned
between $31,000 and $37,000 per year in that job.  (King Dep., at 43, 66; Courseault Decl., ¶¶ 4-
6 & Exh. A-C; Back Dep., at 29.)  By contrast, the HR job paid a flat $12.00 hourly wage, which
equates to a shade below $25,000 per year, assuming full-time work and no unpaid time off.
(*Id.*, ¶ 19; Lee Dep., at 35, 39.)  It thus appears highly unlikely that King has incurred any lost
wages arising from her non-selection for that position.

[16]　　　Blank bid forms are available from the CareerLine website and can be completed
online, then printed out by the employee or her manager.  (Kickliter Dep., at 42-43.)  As one
ADT manager explains, "the person that's interested in applying prints the job bid.  It's right
there in front of them."  (Kickliter Dep., at 43.)  More precisely, there is a direct link to the job
bid form on the CareerLine screen.  (Back Dep., at 88.)

form as a precondition to considering someone for a particular job.  (*Id.* at 68-69.)  Employees were apprised of the need to submit a bid form by a page on the ADT CareerLine site labeled "Human Resources Ground Rules," which clearly stated that "[e]mployees interested in applying for a position must fill out an <u>Employee Bid Form</u>."  (Courseault Decl., ¶ 13 & Exh. D.)[17]

King never completed and submitted a bid form for the HR job.  (King Dep., at 85-86; Kickliter Dep., at 33, 109, 113.)  Indeed, King never approached her direct supervisor, Back, and asked her to sign such a form.  (Back Dep., at 61-62.)  In filling the vacancy for the HR job, Kickliter interviewed each and every internal applicant who had submitted a job bid form.  (Kickliter Dep., at 46-48.)[18]  Without a signed bid form from King, however, Kickliter could not and did not interview or otherwise consider her for that position.  (*Id.* at 125-26.)  Plaintiff has proffered no evidence that ADT ever considered any internal applicant for a posted position if that applicant had failed to submit a job bid form, nor has she proffered evidence that ADT ever sought out internal applicants who failed to submit a job bid form to remind them of the necessity that they do so.[19]

Kickliter ultimately selected and hired an external candidate named Valerie Saunders, a

---

[17]     Those Ground Rules outline the proper procedures concerning bid forms, including (a) the requirement that the employee's immediate supervisor sign the form to ensure that the employee is in good standing and that the supervisor is aware of the request; and (b) the requirement that the bid form be submitted to the contact person listed in the posting announcement.  (*Id.*)  The Ground Rules also provide that, in order to be eligible to apply for a posted position, "[e]mployees must have at least six months in their current position."  (*Id.*)

[18]     Kickliter's recollection was that there were at least three internal candidates for the human resource coordinator vacancy in December 2005, not counting King.  (Kickliter Dep., at 25-27.)  Brandy Lee did not apply for that job at that time, and was not considered for the position.  (*Id.* at 33; Back Dep., at 62.)

[19]     For her part, Back testified that it was not unusual for employees to express interest in a posted position, then fail to follow up by submitting a job bid form for their supervisor's signature.  (Back Dep., at 79-80.)  Accordingly, Back saw no cause for concern when King indicated she was interested in the human resource coordinator job, then failed to bring her a job bid form.  (*Id.*)  Also, when asked why she had never reminded King to bring her a bid form, Back testified, "[I]t's part of the protocol.  It's clearly stated on there what the applicant has to do to apply for the job."  (*Id.* at 85.)  Plaintiff has offered no evidence that Back ever specifically reminded any other employee to submit a job bid form if they wished to apply for a posted vacancy, so there is no indication of disparate treatment in that regard.

black female, to fill the human resource coordinator position.  (*Id.* at 25, 32, 62, 107.)

> **D.     The January 2006 Hiring Decision.**

Unfortunately, Saunders voluntarily resigned from ADT because of personal issues on or

about January 17, 2006, just two weeks after she arrived.  (Kickliter Dep., at 60-61, 108 & Exh.

1.)  As a result, the human resource coordinator position again was vacant and needed to be

filled.  King learned from others in the office that "the new girl" had left, so she was aware of the

vacancy.  (King Dep., at 93-94.)  Although the evidence on this point is hotly contested,

plaintiff's evidence is that the position was never formally posted on ADT's CareerLine site and

that there was only a single applicant for the vacancy.  (King Decl., ¶¶ 16-17.)  However, King

admits that she did not contact Back or Kickliter at any time during January 2006 to profess a

desire to apply for the job or to inquire as to when or if the position would be posted.  (King

Dep., at 84, 95-96.)  Indeed, she made no inquiries of any kind about the position until February

1, 2006, when she sent a one-line email message to Kickliter (with a copy to Back) that read in

its entirety, "I wanted to know if you were still hiring for the Human Resource position?  What is

the status on that position?"  (King Dep., at 88-90 & Exh. 9.)  Plaintiff conceded in her

deposition that the February 1 email marked "the first time that [she] had asked either [Back] or

[Kickliter] anything about the position" that came open in January 2006.  (King Dep., at 90.)

By that time, it was too late.  The position had already been filled.  Kickliter promptly

apprised King of that fact.  (*Id.* at Exh. 9.)  The person selected to fill the HR job in January

2006 was a current employee named Brandy Lee.  (Kickliter Dep., at 63.)[20]  Lee was a white

female who had begun working for ADT's Mobile office as an outside sales representative in

May 2005.  (King Decl., ¶ 4; Lee Dep., at 12-13; Back Dep., at 52.)  By all accounts, Lee did not

thrive in sales, but instead "struggled along" and "had difficulties."  (Back Dep., at 36; Lee Dep.,

at 13.)  In October 2005, Back had moved Lee into inside sales in an attempt to help her succeed.

---

[20]     It is uncontested that neither Kickliter nor Back (nor any other ADT manager)
solicited Lee's application for the human resource coordinator job.  (Lee Dep., at 23.)  Lee
learned of the vacancy just as King did, simply by virtue of her awareness that "the lady that was
there before had left. ... [I]t was just knowing somebody who's not there anymore, not seeing
them."  (*Id.* at 22-23.)  Thus, there is no indication that Lee was privy to any secret, inside
information about the vacancy or the application process that was concealed from King or other
potential applicants.

(King Decl., ¶ 8; Back Dep., at 41-43.)  In that capacity, Lee had continued to perform "not very well."  (Back Dep., at 58-59.)  Despite this history, and in contrast to King's silence, Lee approached Back after Saunders' abrupt departure and expressed interest in applying for the HR job.  (*Id.* at 58.)  Although it was not Back's decision whether ADT would hire Lee as human resource coordinator, Back told Lee that she should pursue it if she was interested.  (*Id.* at 58-60.)

Lee knew that she needed to obtain clearance from Back before she applied for the HR job because under ADT's system, "you are supposed to go through your manager and get permission first.  You are supposed to do a job bid worksheet."  (Lee Dep., at 25.)  Lee was aware of this requirement, not because Back or Kickliter alerted her to it, but because that information was "online inside ADT."  (*Id.*)  Accordingly, there is no reason to believe that any ADT decisionmaker took any special steps to apprise Lee of the bid form requirement, or that the information available to Lee and King concerning the vacancy diverged in any respect.  In deference to the job bid requirement, Lee went online, printed out and completed the job bid worksheet, and gave it to Back, who signed it.  (Lee Dep., at 27.)  The bid form was then turned in to Kickliter.  (Kickliter Dep., at 63.)  King never submitted a completed bid form for the January 2006 vacancy.  (*Id.*)

Kickliter testified that she selected Lee for the human resource coordinator job in January 2006 because of Lee's qualifications, which included human resource experience (to-wit: managing 16 employees at the Baldwin County Mental Health Center).  (Kickliter Dep., at 63-64; Lee Dep., at 30-31.)[21]  In Kickliter's view, Lee's sales performance or, more precisely, her failure to meet quotas as a sales representative, was not pertinent to her suitability to the administrative function and would not preclude her consideration for the HR job.  (Kickliter Dep., at 67, 116-18.)  As Kickliter put it, "sales is different position than an administrative

---

[21]     The record reflects that, prior to Kickliter making this decision, she attended a lunch with Back and Amanda Phillips, an ADT manager whom Lee classifies as "a friend of [hers]" who first suggested that Lee apply for a sales job at ADT in May 2005.  (Lee Dep., at 14-15; Kickliter Dep., at 73.)  At that lunch, Back informed Kickliter that Lee was interested in applying for the human resource job and that Back would give Kickliter the job bid form.  (Kickliter Dep., at 73-74.)  There was no testimony that Back or Phillips pressured Kickliter to hire Lee over King, or that King was ever mentioned during this meeting.

position ... [a]nd a lot of the administrators probably wouldn't be a good salesperson."  (*Id.* at 117.)  Furthermore, Back's testimony was that she had never disciplined Lee for her sales work "outside of the normal coaching and performance improvements that we normally write up," and that Lee had not missed her quota more than three or four times.  (Back Dep., at 70-71.)[22]  Back further testified that she had never been able to identify any specific root cause for Lee's travails as a salesperson, in terms of things she was doing or not doing.  (*Id.* at 37-40.)

> **E.      *The EEOC Charge of Discrimination.***

On March 23, 2006, King filed a Charge of Discrimination with the Birmingham District Office of the Equal Employment Opportunity Commission.  (King Dep., at Exh. 13.)  The Charge sounded exclusively in race discrimination, and the "retaliation" box was left unchecked. In the body of the Charge, King stated that she had applied for the HR job on December 9, 2005; that she was never interviewed despite meeting the qualifications; and that a white female was selected on February 2, 2006.  (*Id.*)  King stated that she believed she was a victim of race discrimination, and concluded that "[t]he employer [*sic*] pre-textual reason for its failure to appoint me to the position, and appointing the white applicant discriminates against me because of my race, black."  (*Id.*)  Nowhere in the EEOC Charge did King make any reference to being forced out of her office in October 2005, to her complaint to Courseault, or to any allegation of retaliation.  On May 10, 2006, the EEOC informed King that its investigation failed to disclose evidence that her race was a factor in the challenged personnel decision.  (King Dep., at Exh. 14.)  This lawsuit followed.

## IV.    Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party

---

[22]      Despite her fine performance, even King had received coaching forms and performance improvement plans on occasion when her sales production fell below 70% of quota. (King Dep., at Exh. 17 & 18.)  As such, there was nothing unusual or untoward about ADT taking similar measures with respect to Lee.

has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.* at 1086 (citation omitted).

## V.  Analysis.

### A.  *The* McDonnell Douglas *Burden-Shifting Framework.*

Absent direct evidence of discrimination,[23] King must make a showing of circumstantial evidence which satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this familiar burden-shifting analysis, plaintiff is required to make out a *prima facie* case of race discrimination and retaliation.[24] If she does so, that showing "creates a rebuttable presumption that the employer acted illegally." *Underwood v.*

---

[23] Both parties' briefs rely exclusively on a *McDonnell Douglas* inferential analysis. As there is no indication in the record of any direct evidence that ADT acted with a discriminatory or retaliatory motive, the Court will rely exclusively on the inferential mode of analysis, just as the parties have done.

[24] King's burden of establishing a *prima facie* case is not heavy. *See Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

*Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005).  At that point, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for [the adverse employment action]. ... If the employer does so, the burden shifts back to the plaintiff to introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997) (citations omitted).  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted).  The ultimate burden of persuasion remains with the plaintiff.  *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).  Thus, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*).

Here, King complains of race discrimination and retaliation by ADT in hiring/transfer decisions.  To establish a *prima facie* case of discriminatory denial of promotion or failure to hire, a plaintiff must show that (i) she belongs to a protected class; (ii) she was qualified and applied for a position the employer was trying to fill; (iii) she was denied the position; and (iv) others who were not members of the protected class were hired, or the employer continued to seek applicants with the plaintiff's qualifications.  *See Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005); *Underwood*, 431 F.3d at 794; *Wilson*, 376 F.3d at 1089.[25]  "A plaintiff does not shift the burden to the defendant under *McDonnell Douglas* merely

---

[25]      This formulation of the *prima facie* test differs from that relied on by defendant, who frames the fourth element as being that "other equally or less qualified employees who are not members of the protected minority were promoted."  (Defendant's Brief (doc. 20), at 17.) That is an incorrect statement of the law in this Circuit, which has unequivocally rejected the notion that a plaintiff must address relative qualifications as part of her *prima facie* case.  *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998) ("we hold that district court in this case erred in imposing as part of the *prima facie* case a requirement that each plaintiff establish that the successful applicant for his or her coveted position was less than or equally qualified to hold the position").  The Court therefore declines to impose a relative-qualifications requirement on King as part of her *prima facie* burden.

by stating that he was fired or treated unfavorably. *McDonnell Douglas* requires the plaintiff to establish a *prima facie* case which includes identifying an individual who replaced him or was treated better than he was who was not a member of his protected class." *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005); *see also Underwood*, 431 F.3d at 794 (finding that Title VII plaintiff in failure-to-hire context must show that successful applicant was not within his protected class). "Only after the plaintiff has made his *prima facie* case does the burden shift to the defendant." *Morris*, 402 F.3d at 1082.

With respect to King's retaliation claims, Title VII bars an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("Retaliation is a separate violation of Title VII.").[26] In the absence of direct evidence, Title VII retaliation claims turn on the same *McDonnell Douglas* burden-shifting analysis as do other Title VII claims. *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002). Thus, a plaintiff bears the burden of establishing a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse action. *See Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). If a plaintiff makes a *prima facie* showing, then the employer must articulate a legitimate, non-retaliatory reason for the challenged decision. *See Brochu*, 304 F.3d at 1155; *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer produces legitimate reasons for the adverse employment action, then the plaintiff must show that these stated reasons are pretextual. *See Brochu*, 304 F.3d at 1155. Of course, the ultimate burden rests on the plaintiff to show that the employer's stated reason is a pretext for unlawful retaliation. *See Pennington*, 261 F.3d at 1266.

---

[26]     *See also Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed"); *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999) (similar).

-19-

Construing the Complaint liberally, plaintiff's discrimination and retaliation claims also sound in 42 U.S.C. § 1981; however, the substantive analysis for those claims is no different than it is for parallel Title VII claims.  Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts, and extends to the employment context.  *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004).   Section 1981 also includes a cause of action for retaliation.  *See generally Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1412 (11th Cir. 1998).[27]  Although § 1981 claims do not share the exhaustion requirement of their Title VII counterparts,[28] their elements are identical in a disparate treatment case.  Indeed, "[b]oth of these statutes have the same requirements of proof and use the same analytical framework."  *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *see also Cooper v. Southern Co.*, 390 F.3d 695, 724 n.16 (11th Cir. 2004) ("The *McDonnell Douglas* framework for establishing a *prima facie* case is used in intentional discrimination cases brought under either Title VII or Section 1981."); *Sanders v. City of Montgomery*, 319 F. Supp.2d 1296, 1311 (M.D. Ala. 2004) ("The legal analysis of claims of race discrimination pursuant to either Section 1981 and Title VII is the same.").  This Court therefore relies on the traditional Title VII framework to analyze plaintiff's § 1981 claims, just as it does in evaluating her Title VII theories of recovery.

---

[27]     The Eleventh Circuit has recognized that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit."  *Bass v. Board of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001).  Where, as here, the parties have relied on the Title VII framework for § 1981 retaliation claims, the Eleventh Circuit has done the same.  *See Everson v. Coca-Cola Co.*, 2007 WL 2088839, *1 (11th Cir. July 23, 2007.)  This Court will follow suit.

[28]     *See, e.g.*, *Garrett v. Tandy Corp.*, 295 F.3d 94, 108 (1st Cir. 2002) (explaining that "section 1981 is not blunted by devices used in Title VII, such as agency exhaustion"); *Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971) (holding that a plaintiff alleging discriminatory employment practices with regard to race "has an independent remedy under § 1981 without respect to exhaustion under Title VII"); *Sanders v. City of Montgomery*, 319 F. Supp.2d 1296, 1311 (M.D. Ala. 2004) ("Unlike their counterparts brought pursuant to Title VII, claims of race discrimination pursuant to Section 1981 do not require timely exhaustion of administrative remedies with the EEOC prior to suit.").

**B.      *Plaintiff's Discrimination Claims Related to the Office Move.***

In her summary judgment brief, King advances a claim of "race discrimination in her involuntary removal from her Inside Sales position," and states that she "is complaining of forced removal from her office where she performed Inside Sales responsibilities."  (Plaintiff's Brief (doc. 27), at 13-14.)

Before even reaching a *McDonnell Douglas* analysis on this theory of liability, defendant asserts that any discrimination claim relating to King's reassignment is not part of this action because it was never properly joined via the pleadings, as required by Rule 8, Fed.R.Civ.P. Plaintiff's only rejoinder is that her *pro se* Complaint should be given a liberal construction and that the Rule 26(f) Report lent "more clarity to King's claims at an early stage of the litigation so that Defendant is hard pressed to claim any prejudice in defending this action."  (Plaintiff's Brief, at 1-2.)

Neither side furnishes any citations to authority applying Rule 8 to similar circumstances; however, the text of the rule requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2).  To satisfy the liberal pleading standard of Rule 8(a), the complaint must put the defendant "on notice as to the claim being asserted against him and the grounds on which it rests."  *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 823 (11th Cir. 2001) (internal quotes omitted); *see also Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (Rule 8 requires only a statement that "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests") (citation omitted); *Watts v. Florida Int'l University*, --- F.3d ----, 2007 WL 2331029, *5 (11th Cir. Aug. 17, 2007) (complaint must contain enough factual matter to suggest required elements of claims).  King's Complaint does not satisfy even this low threshold.  Although the Complaint mentions Title VII and 1981, the only supporting facts stated are that King was passed over for the HR job in February 2006. Nothing in the text of the Complaint could place ADT on notice that plaintiff was bringing a claim of race discrimination concerning King's involuntary reassignment out of her office and into outside sales in October 2005.  King fails to offer any explanation for how ADT could possibly have known from reviewing the Complaint that she was suing it for moving her to outside sales and giving her office to a white co-worker.

Apparently conceding that ADT could not have known from the Complaint that her

office reassignment claim was joined in this action, King would have the Court excuse this Rule 8(a)(2) noncompliance because she filed the Complaint before retaining counsel and because her mention of the claim in the Rule 26(f) Report negates any unfair surprise. Both arguments are conclusively defeated by *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563 (11th Cir. 1987), which is markedly similar to the case at bar. In *Coon*, the plaintiff filed a *pro se* complaint averring generally that her employer had acted in a discriminatory manner, referencing only a single alleged discriminatory act (denial of a promotion). Although she never attempted to amend the complaint, in a pretrial stipulation the plaintiff proffered eight specific instances of discrimination for which she sought to hold the defendant liable. The Eleventh Circuit found that the district court properly limited the plaintiff to her promotion claim. As an initial matter, the *Coon* panel determined that the plaintiff was not entitled to the benefit of the liberal rules governing *pro se* pleadings, inasmuch as she had "admitted that counsel had helped to draft" her complaint. *Coon*, 829 F.2d at 1569, n.6. Moreover, the appeals court concluded that the complaint violated Rule 8(a)(2) by omitting reference to the eight specific claims, notwithstanding her subsequent references to them in a pretrial filing. The court explained that "the inclusion of claims in the pretrial stipulation, the mention of them in discovery and the filing of motions concerning those claims were not a substitute for the factual allegations of a complaint under Federal Rule of Civil Procedure 8(a)." *Id.* at 1568.

Thus, *Coon* teaches that King is not entitled to the relaxed standards of *pro se* pleadings because she had assistance of counsel in drafting her Complaint; indeed, her testimony is that she simply "typed exactly what [the lawyer assisting her] told [her] to put down" in her Complaint. (King Dep., at 130.)[29] Accordingly, the sufficiency of the Complaint will not be evaluated as a *pro se* filing. Moreover, it is clear from *Coon* that King's mere mention of additional proposed

---

[29]    Even if this were not so, plaintiff did retain counsel (albeit not the lawyer who dictated the Complaint language to her) well before the deadline for amending pleadings and her counsel never requested leave to amend the Complaint. A party represented by counsel cannot claim sanctuary in the wide latitude afforded *pro se* litigants in drafting pleadings, where counsel was retained with ample opportunity to amend the complaint to correct any flaws well in advance of the requisite cutoff date.

claims in the Rule 26(f) Report is not a substitute for a proper amendment of the pleadings.[30]

Even if the Complaint were properly evaluated under the liberal standards applied to *pro se* filings, it still falls short. As a general rule, *pro se* pleadings are held to less stringent standards than other pleadings. *See, e.g., Erickson*, 127 S.Ct. at 2200 ("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (noting that "we are to give liberal construction to the pleadings of *pro se* litigants"). But a filer's *pro se* status does not excuse her from compliance with the Federal Rules of Civil Procedure. *See Albra*, 490 F.3d at 829 (notwithstanding liberal construction of *pro se* filers' pleadings, "we nevertheless have required them to conform to procedural rules") (citation omitted); *Hales v. City of Montgomery*, 347 F. Supp.2d 1167, 1171 (M.D. Ala. 2004) ("Notwithstanding a more liberal construction, however, the *pro se* plaintiff's complaint must meet the minimum requirements of presenting a viable claim."); *Delgado v. Federal Bureau of Prisons*, 727 F. Supp. 24, 27 (D.D.C. 1989) ("even a *pro se* complaint must outline all of the elements of the claim and is subject to dismissal if the pleading fails reasonably to inform the adverse party of the asserted cause of action"). Nor does a plaintiff's *pro se* status trump the defendant's right to be placed on notice, via a proper pleading, of a short and plain statement of the claims brought against it. King did not comply with this requirement; therefore, her attempt to circumvent the pleading rules to inject a new claim into this litigation via a report of parties' planning meeting and a summary judgment brief cannot succeed. *See Coon*, 829 F.2d at 1568-69; *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").[31]

---

[30]    King's counsel was plainly aware that amendment of the pleadings would be necessary if these newly asserted claims were to be pursued, else he would not have included a footnote in the Rule 26(f) Report that "Plaintiff intends to seek leave to amend her complaint within the period allowed by this joint Report of Parties." (Doc. 13, at 1-2 n.1.)

[31]    Besides, plaintiff's sworn deposition testimony makes clear that she omitted the office removal claim from her Complaint not because she did not know how to frame her pleading from a technical standpoint, but because it never occurred to her to bring such a claim. King testified that she failed to mention the office assignment in her Complaint because "I didn't think about that, that one, you know, that time. I didn't think to put that in. ... That the incident

-23-

For all of the foregoing reasons, defendant's Motion for Summary Judgment is **granted** with respect to plaintiff's race discrimination claims under Title VII and § 1981 predicated on her "forced removal from her office where she performed Inside Sales responsibilities." (Plaintiff's Brief, at 14.)

> **C.**  **Discrimination and Retaliation Claims Relating to the December 2005 Hiring Decision.**

Next, defendant seeks judgment as a matter of law on plaintiff's race discrimination and retaliation claims arising from the December 2005 hiring of Valerie Saunders as human resource coordinator.  However, it does not appear that King is positing any causes of action of any stripe relating to the hiring of Saunders.  Three separate documents buttress this conclusion.  First, the Complaint references only the hiring of a white female in February 2006.  (Doc. 1, ¶ 4.) Saunders is black and was hired in December 2005.  Second, plaintiff's narrative statement of claims in the Rule 26(f) Report is silent about the Saunders hiring, but complains only about the selection of Brandy Lee for the HR job.  (Doc. 13, at 1-2.)  Third, nothing in plaintiff's brief opposing summary judgment references claims of race discrimination or retaliation arising from Saunders' hiring; to the contrary, the brief is framed solely in terms of a race discrimination claim relating to King's office move and reassignment to outside sales, and a race discrimination and retaliation claim pertaining to the hiring of Lee for the HR job in January 2006.  (Doc. 27.)

To the extent, however, that King does intend to bring race discrimination or retaliation claims pertaining to the Saunders hiring decision in December 2005, those causes of action fail as a matter of law.  King cannot establish a *prima facie* case of race discrimination because the candidate hired to fill the position is of the same protected class as plaintiff.  *See, e.g., Vessels*, 408 F.3d at 768 (listing as one element of *prima facie* case of race discrimination that "the position was filled with an individual outside the protected class").  Even assuming that King could establish a *prima facie* case of retaliation, ADT has articulated a legitimate, non-retaliatory

---

about the Human Resource Coordinator position, that's what I was you know, complaining about."  (King Dep., at 192.)  Thus, it is undisputed that plaintiff never intended to complain about the office reassignment when she filed the Complaint.  The rules governing *pro se* pleadings do not allow a pleading (nominally filed *pro se*, but ghostwritten by an attorney) to be construed as encompassing causes of action that the pleader never raised and never meant to raise.

reason for not selecting King, to-wit: that she did not comply with the posted, neutral requirements for application by submitting a completed job bid form, as clearly directed by the company's CareerLine website. Plaintiff having made no showing that this stated reason for her non-selection was a pretext for unlawful retaliation, any retaliation claims related to the Saunders hiring decision cannot withstand Rule 56 scrutiny.

> **D.    *Plaintiff's Discrimination and Retaliation Claims Relating to the January 2006 Hiring Decision.***

Finally, the Court turns to plaintiff's claims of race discrimination and retaliation arising from ADT's hiring of Brandy Lee for the HR job in January 2006.[32]

> **1.    *Race Discrimination.***

Defendant contends that plaintiff cannot make a *prima facie* showing of race discrimination because she cannot show that she applied for the position or that the successful applicant was equally or less qualified. As noted *supra*, the Eleventh Circuit has held that relative qualifications are not to be considered in an analysis of the *McDonnell Douglas prima facie* framework. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998). Accordingly, the Court does not adopt defendant's contention that King has failed to make a *prima facie* showing because she has not established that Lee is equally or less qualified than she.

With respect to ADT's other argument, in the failure to promote/hire context, it is generally true that one element of the *prima facie* case is that the plaintiff must have actually applied for the job. *See Vessels*, 408 F.3d at 768 (listing as second element of *prima facie* case that plaintiff "was qualified for and applied for a position that the employer was seeking to fill"). Defendant's position is that, unlike Lee, King never applied for the January 2006 vacancy because she never submitted a completed job bid form. It is undisputed that (a) a job bid form

---

[32]    It is unclear precisely what form King intends for this claim to take. Her Complaint couches the hiring of Lee as a claim of race discrimination under Title VII, and also makes passing reference to § 1981 and retaliation. Plaintiff's summary judgment brief argues this claim both from the standpoint of retaliation and race discrimination, adopting a substantively identical analysis for each, without delineating whether she intends to posture that claim under Title VII or § 1981, or both. In an abundance of caution, and despite the vagueness of plaintiff's filings, the Court will construe this claim as one for both race discrimination and retaliation, brought pursuant to both Title VII and § 1981.

was an essential component of an application by any internal candidate for any posted job; (b) ADT did not hire internal candidates for posted positions if they failed to submit a bid form; (c) King never submitted a job bid form for the HR job, either in December 2005 or January 2006; and (d) ADT's decisionmaker (Kickliter) had no knowledge that King was applying for the position in January 2006 and could not consider her for the opening without a bid form.  The factual wrinkle for summary judgment purposes, however, is King's testimony that the January 2006 vacancy for the HR job was never posted on the company's CareerLine.  At this stage, King's sharply contested evidence on this point must be accepted as true.[33]  Circuit authority provides that "where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position - only that the employer had some reason to consider him for the post."  *Vessels*, 408 F.3d at 768.

In the undersigned's view, King has not come forward with sufficient evidence to show that ADT had any reason to consider her for the January 2006 HR job vacancy.  That vacancy was in a different department than King was working in, and paid less than King's job did.  She had not submitted a complete application in December 2005, when the position had come open previously.  When King learned that the incumbent had resigned in January 2006, she did not go to Back, to Kickliter or to any other manager to ask about the job or to express interest in applying.  Indeed, King's only evidence that Kickliter should have known to consider her was that (a) three months earlier, in October 2005, King had asked Back about the job when it had come open previously, but had never followed up with a bid form; (b) King had filled out the computer portion of the application on December 9, 2005 in connection with the prior vacancy, so Kickliter and Back must have been aware that she was interested; and (c) King had "several conversations ... with them regarding the position" at unspecified times and with unspecified content, although she never told either Back or Kickliter that she had applied.  (King Decl., ¶ 19;

---

[33]      In attempting to refute plaintiff's evidence, defendant does not offer computer records or logs establishing the dates that the position was posted, screenshots of the posting, the identities of the applicants, the dates of their applications, or other objective indicia that a formal posting occurred.  Instead, ADT merely offers general testimony that the job was posted, which cannot rebut King's assertions otherwise for summary judgment purposes.

King Dep., at 84-85.)

This is not sufficient to meet even plaintiff's light *prima facie* burden of showing that ADT had some reason to consider her for the January 2006 vacancy. Plaintiff's idle expression of interest to Back three months earlier certainly did not put Back on notice that King wanted the job in January 2006, especially when King had never followed up with Back in December by giving her the necessary job bid form. It is uncontroverted that Back interpreted King's failure to follow up as an indication that she had decided not to go forward with the application process, and that Back thought nothing of it. Nor does King's submission of a partial, incomplete application for a prior vacancy in December 2005 suffice to place ADT on notice that King wanted to apply for a new vacancy in January 2006. King offers no evidence that Kickliter or Back had ever received that partial application in December. Moreover, since King failed to follow clear, unequivocal instructions in order to complete her application in December 2005, ADT had no reason to believe that she wanted to go through with her application then, much less that she was interested in trying again in January 2006. Nor does King preserve this claim with her vague reference to "several conversations" with Back and Kickliter regarding the HR job. King does not allege that she ever specifically told Back or Kickliter at any time that she had applied for that job in December 2005, or that she wanted to apply for that job in January 2006. To the contrary, King admits that she never told Back or Kickliter that she had tried to apply in December. King also admits that she never asked Back or Kickliter about the HR job opening of January 2006 at any time until February 1, at which time the position had already been filled. For all of these reasons, the Court finds that King cannot establish a *prima facie* case of race discrimination in connection with the January 2006 because she did not apply for the HR job and ADT had no reason to consider her for that position.

Even if plaintiff could make a *prima facie* showing of race discrimination, the Court finds that ADT has established a legitimate nondiscriminatory reason for its non-selection of King, and that King has failed to adduce sufficient evidence to create genuine issue of material fact as to whether that stated reason is pretext for race discrimination. In particular, ADT presents substantial evidence that it did not hire King for the January 2006 vacancy because she did not

-27-

submit a bid form for the position.[34]  Defendant's evidence is that without a bid form, Kickliter would neither interview a candidate nor otherwise consider her for an opening.  King never submitted a bid form for the January 2006 HR job vacancy, so she was not considered.  Defendant's evidence on this front is more than adequate to satisfy its burden of production.

The summary judgment record would not allow a reasonable factfinder to conclude that this stated reason for not hiring King is a pretext for unlawful discrimination.  It is uncontroverted that the successful applicant, Brandy Lee, did submit the required bid form.  It is further uncontroverted that Kickliter has never interviewed or otherwise considered an internal candidate for a posted position without a signed bid form.  More generally, the undisputed evidence reflects that King did not submit a bid form for the January 2006 vacancy, even though she was afforded the same opportunities and access to information about the job as Lee was.  Significantly, there is no evidence that ADT officials furnished Lee with inside information

---

[34]     In the alternative, defendant asserts that "assuming King had applied for the January 2006 opening, Lee was more qualified because of her higher education level and previous experience in a supervisory position handling human resources related issues." (Defendant's Brief (doc. 20), at 21.)  The problem with this line of argument is that defendant offers no evidence that ADT's decisionmaker, Kickliter, deemed Lee more qualified than King for the January 2006 vacancy.  To the contrary, there is no evidence that Kickliter ever compared the relative qualifications of King and Lee, or that Kickliter ever considered King for the January 2006 vacancy at all.  Kickliter's deposition testimony was clear that she would never consider an applicant who had not submitted a bid form, and that she never received a bid form from King. (Kickliter Dep., at 39-40, 109-10.)  Thus, ADT would have the Court find as a legitimate nondiscriminatory reason for the challenged personnel decision that King was less qualified than Lee, even though there is no evidence that anyone at ADT actually held that view or compared their relative qualifications at any time.  That defense counsel may feel that Lee was more qualified than King for that vacancy is not evidence that can be weighed on summary judgment; indeed, mere contentions not backed by evidence are manifestly insufficient to satisfy a defendant's burden of production.  *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n.9, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("an articulation not admitted into evidence will not suffice" and "the defendant cannot meet its burden merely ... by argument of counsel"); *IMPACT v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990) (reversing lower court's finding that defendants satisfied burden of production where they merely contended that person believed to be most qualified was hired, without offering any proof by any person who made the employment decision that such was the case); *see also Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003) (applying *IMPACT* to reject defendant's mere general statement that employment decision was based on hiring of best qualified applicant).

about the job vacancy.  There is no evidence that Lee's awareness about the job opening was any greater than King's.  There is no evidence that ADT misled or deceived King in any way to prevent her from applying, or that King ever asked any ADT official about applying for the vacancy in January 2006.  There is no evidence that ADT coached Lee to fill out the job bid form, or that it suppressed or concealed that requirement from King; to the contrary, the job bid requirement was prominently recited on the CareerLine website which both King and Lee consulted in reference to the HR job.

Notwithstanding the foregoing, plaintiff attempts to show pretext in two respects.  First, plaintiff protests that she "knew nothing about" the bid form rule.  (Plaintiff's Brief, at 24.)  In that regard, King attempts to deflect the blame to Back and other ADT officials for not telling her that a job bid worksheet was required.  (King Decl., ¶¶ 6-7.)  But plaintiff does not and cannot dispute that the bid form requirement was clearly stated in the "Ground Rules" on the company's intranet website where employees apply for posted positions.  (Courseault Decl., ¶ 13 & Exh. D.)  Lee was aware of the requirement from having read the website.  (Lee Dep., at 25.) King could have done the same.  Plaintiff has no evidence that ADT ever reminded anyone of the bid form requirement, so their failure to furnish her with such a reminder does not undermine the company's uniform, across-the-board application of that requirement to exclude King from consideration for the HR job.  King cannot fault defendant for her own failure to read and abide by the Ground Rules, so this attempt at showing pretext fails.[35]

Plaintiff's second method of attempting to show pretext is to argue that ADT "ignored the rules relating to time on the job, good standing and good performance when considering Lee's application for the vacancy. ... A reasonable fact-finder could conclude that the Defendant ... bent or ignored the rules in favor of Lee, to the detriment of King."  (Plaintiff's Brief, at 25.) Inspection of the record reveals otherwise.  With respect to the time on the job requirement, the

---

[35]     Equally unavailing is plaintiff's misleading and unfair characterization of the facts as being that "King was not considered for the position because Back failed to sign off on a job bid form required for internal job transfers or changes."  (Plaintiff's Brief, at 20.)  There is no evidence that plaintiff ever asked Back to sign such a form.  Thus, the stumbling block to plaintiff's application for the HR job was not that Back refused to sign the form, but was instead that King failed to present the form to Back pursuant to the Ground Rules.

Ground Rules for internal candidates to apply for posted positions clearly state that "[e]mployees must have at least six months in their current position" to be eligible.  (Courseault Decl., ¶ 12 & Exh. D.)  Having arrived at ADT in May 2005, Lee had been working there for eight months when she applied for the HR job in January 2006.  (Lee Dep., at 12.)  Thus, contrary to plaintiff's argument, there was no bending or ignoring of this rule with respect to Lee.[36]

Nor can plaintiff show pretext by asserting that Back's signature on Lee's bid form amounted to "falsely certifying that Lee was in good standing and met all company rules and polices [*sic*] required for moving to a new position."  (Plaintiff's Brief, at 21.)  There is no evidence that Lee was not an employee in good standing.  To be sure, the record reflects that Lee was not a model salesperson, or even a successful one; however, Back's uncontroverted testimony was that Lee had never been disciplined any fashion outside of the normal coaching and performance improvements (which even King had received from time to time), and that Lee had never missed her quota more than three or four times.  (Back Dep., at 70-71.)  Moreover, Back's testimony was that while Lee had not achieved great results as a sales person, there was "nothing in particular that she was, you know, really falling down or not doing."  (*Id.* at 39.)  Thus, the record does not support plaintiff's contention that Back's written certification that Lee was an employee in good standing was in any way false or a violation of ADT rules.

Plaintiff's final attempt to show pretext is to argue that Lee's suboptimal performance in inside sales should have disqualified her for the HR job.  King points to no evidence other than her own subjective belief that this factor should have guided the company's decision.  Again, the uncontroverted record evidence is that Lee had never been disciplined for poor performance and

---

[36]     To support her position, King points to a passage from the ADT handbook stating that an employee is "generally required to remain in [her] position for at least twelve (12) months before transferring to another position."  (King Decl., at Exh. A.)  However, she comes forward with no evidence that this general handbook language trumps the specific six-month rule set forth in the Ground Rules, or indeed that it has any application whatsoever to the applications of internal candidates for posted vacancies on CareerLine.  Both logic and common sense suggest that specific rules governing online applications by internal candidates for posted positions should enjoy primacy over more general rules recited in an employee handbook.  Plaintiff has presented no evidence to the contrary, but instead simply seizes on the more advantageous handbook language without any showing that such language applies to CareerLine applications.

that Lee was doing all the things required of sales representatives, just not getting results.  That Lee (like King) had been coached from time to time for missing quotas in no way barred her from consideration for a posted job.  Besides, Kickliter's testimony was that performance in sales was not indicative of likely performance in the HR job, so Lee's difficulties in meeting quotas were not viewed by the decisionmaker as fatal to her application.  (Kickliter Dep., at 67, 116-18.)

For all of the foregoing reasons, plaintiff has failed to make a sufficient showing that defendant's stated reason for not hiring her into the HR job in January 2006 is a pretext for race discrimination.  As such, there are no genuine issues of material fact on plaintiff's Title VII and § 1981 claims relating to the January 2006 non-selection of King for the human resource coordinator job, and defendant is entitled to summary judgment.

2.     *Retaliation.*

Plaintiff also brings a separate Title VII and § 1981 retaliation claim predicated on the January 2006 hiring decision.  The legal analysis is somewhat different here, in the sense that the elements of a *prima facie* case are different, and defendant has the additional defense (with respect to the Title VII retaliation claim) that King failed to present the retaliation cause of action to the EEOC.  However, the Court need not delve into the minutiae of these issues. Plaintiff concedes that the pretext analysis is identical for both her race discrimination claims and her retaliation claims arising from the January 2006 hiring decision.  (Plaintiff's Brief, at 26.)  As such, assuming that plaintiff could establish protected activity and the other elements of a *prima facie* case of retaliation, and assuming that some aspect of the retaliation claim could survive defendant's exhaustion challenge based on the EEOC Charge, that cause of action would still fail under precisely the same pretext analysis delineated *supra* with respect to the race discrimination claim.  By plaintiff's own argument, if she cannot establish a genuine issue of fact on pretext as to the race discrimination claims, then she cannot do so as to the retaliation claims either.  The Court has already found that defendant is entitled to summary judgment on the race discrimination claims for want of evidence of pretext.  That same defect is fatal as to plaintiff's retaliation claims, as pleaded under § 1981 and Title VII, and requires entry of summary

judgment in defendant's favor on that cause of action.[37]

**VI.    Conclusion.**

Notwithstanding all the ink spilled by the parties and this Court, this is a very simple case.  Plaintiff was passed over for a human resource coordinator job that she wanted.  The uncontroverted evidence is that in applying for the position, King neglected to submit the mandatory job bid form, which was clearly recited in written instructions furnished by the company.  Her failure to submit a job bid form meant that, from the company's standpoint, she had never applied for the vacancy; therefore, she was not considered for it.  Plaintiff has come forward with no evidence that this stated reason for not hiring King into the HR job was pretextual, or that her non-selection was actually motivated by invidious race discrimination or retaliation for statutorily protected activity.  For all of these reasons, defendant's Motion for Summary Judgment (doc. 19) is due to be, and the same hereby is, **granted**.  There being no genuine issue of material fact, plaintiff's Complaint is **dismissed with prejudice**.  A separate judgment will enter.  The Motion to Strike (doc. 32) is **granted in part**, and **denied in part**, as set forth *supra*.

DONE and ORDERED this 17th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[37]        At the conclusion of her brief, plaintiff argues that there are material facts as to whether defendant "followed its own personnel procedures when awarding the promotions in 2000" and whether defendant is "being truthful in the stated reason for the difference in salary given to Plaintiff then [*sic*] that given to her white co-workers."  (Plaintiff's Brief, at 26-27.) These allegations have no bearing on the instant action, and will not be considered.